# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| CHOI AND FLORIS TUTTI INTERNATIONAL, INC., ) ) | |
| Plaintiffs, ) | |
| v. ) ) | C.A. No. N23C-03-122 PRW CCLD |
| SONO AMERICA, INC. (F/K/A ) DAEMYUNG AMERICA, INC.) AND ) DAEMYUNG TUTTI, LLC, ) | |
| Defendants. ) | |

Submitted: July 10, 2025
Decided: August 5, 2025

*Upon Defendant Sono America, Inc.'s Motion to Dismiss,*
**GRANTED**.

## ORDER

**HAVING FULLY CONSIDERED** Defendant Sono International's Motion to Dismiss (D.I. 44); Plaintiffs' Answering Brief (D.I. 49); Defendant Sono International's Reply Brief (D.I. 53); the authorities cited, and the entire record developed thus far, it appears to the Court that:

(1)     In 2016, Sono America entered into a joint venture agreement ("JVA") with TFI Tutti to own and operate spas in shopping malls in the United States via their joint venture company, Daemyung Tutti LLC.[1]

---

[1]     2nd Am. Compl. ¶¶ 13-14 (D.I. 33). At this stage, all factual allegations in the complaint are taken as true. The Court is adopting these facts only for the purpose of this motion.

(2)    Sono International provided a total of $10 million in funding to Sono America, its subsidiary, for the joint venture.[2]

(3)    For the first four years, the joint venture went smoothly and used the $10 million funding.[3] But when the COVID-19 pandemic hit, the joint venture floundered.[4]

(4)    Due to this failure, TFI Tutti filed suit in New Jersey in 2022.[5] In New Jersey, the Court permitted jurisdictional discovery, and TFI Tutti subsequently voluntarily dismissed its action against Sono America to file this claim in Delaware.[6]

(5)    Now, in its second amended complaint, TFI Tutti brings claims against Sono America, Sono International, and Daemyung Tutti, LLC alleging breach of contract (Count 1) seeing to hold Sono International liable via a piercing-the-corporate-veil/alter ego theory (Count 2).[7]

(6)    In response, Sono International filed this motion to dismiss.[8] Sono International insists that:  (a) Delaware has no personal jurisdiction over it; (b) it cannot be held liable for breach of contract because it is not a party to the JVA;

---

[2]    *Id.* ¶¶ 56, 66.

[3]    *Id.* ¶¶ 21, 55.

[4]    *Id.* ¶ 117.

[5]    *Id.* ¶ 1.

[6]    *Id.*; Pl.'s Answering Br. Ex. 3 (Motion to Stay NJ Action), at 3, 43 (D.I. 49).

[7]    2nd Am. Compl. at 42-44.

[8]    D.I. 44.

(c) the contract claim is time barred (which includes the piercing the corporate veil claim); (d) Floris Tutti International Inc. and Mr. Choi do not have standing to pursue the claims against Sono International; and, (e) the case should not proceed with the other matter still pending in New Jersey.[9]

(7) A motion to dismiss under this Court's Rule 12(b)(6) tasks the Court with weighing the complaint's allegations against the governing reasonable conceivability pleading standard.[10] When applying Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, accepts as true all of the complaint's well-pled allegations, and draws all reasonable inferences in the plaintiff's favor.[11] Dismissal is warranted only when "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[12]

(8) "When personal jurisdiction is challenged by a motion to dismiss, the plaintiff has the burden to show a basis for the Court's jurisdiction over the nonresident defendant. The plaintiff satisfies this burden by making a prima facie

---

[9] Def.'s Mot. to Dismiss at 5-23 (D.I. 44).

[10] *Windsor I, LLC v. CWCapital Asset Mgt. LLC*, 238 A.3d 863, 871-72 (Del. 2020) ("The grant of a motion to dismiss is only appropriate when the 'plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.'") (quoting *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

[11] *Id.* (quoting *Deuley v. DynCorp Intern., Inc.*, 8 A.3d 1156, 1160 (Del. 2010)).

[12] *Thompson v. Medimmune, Inc.*, 2009 WL 1482237, at *4 (Del. Super. Ct. May 19, 2009).

showing that jurisdiction is conferred by statute. All factual inferences must be viewed in a light most favorable to the plaintiff."[13]

(9) This Court does not have personal jurisdiction over Sono International. So, Defendant Sono International's Motion to Dismiss is **GRANTED**.

(10) Sono International is incorporated and based in South Korea.[14]

(11) "Personal jurisdiction over a nonresident defendant is analyzed through a two-part test. First, the court examines whether the Delaware long-arm statute, 10 *Del. C.* § 3104(c), authorizes such jurisdiction. Next, the court determines whether such jurisdiction would violate the nonresident defendant's due process rights."[15]

(12) Under 10 *Del. C.* § 3104(c), "Delaware courts can exercise jurisdiction over foreign corporations if the plaintiff's cause of action arises from a jurisdictional act enumerated in the Delaware long-arm statute."[16] This requires that Sono International must have "transact[ed] any business or perform any character[] of work or service" in Delaware that is related to TFI Tutti's claim.[17]

---

[13] *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 727 (Del. Super. Ct. 1996) (citations omitted).

[14] 2nd Am. Compl. ¶ 44.

[15] *Varsity Brands Holding Co. LLC v. Arch Ins. Co.*, 2025 WL 552500, at *5 (Del. Super. Ct. Feb. 19, 2025) (citations omitted).

[16] *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *5 (Del. Ch. Sept. 2, 2008).

[17] *See* DEL. CODE ANN. tit. 10, § 3104(c)(1) (2025).

(13)   When dealing with a parent company doing work via its subsidiary, there are two long-arm theories available to hold the parent company liable: agency and alter ego.[18]  Under both theories, the conduct giving rise to the claims alleged in the complaint must be sufficiently connected to Delaware to satisfy the long-arm statute.[19]

(14)   The agency theory "examines the degree of control which the parent exercises over the subsidiary."[20]  While for the alter ego theory "the contacts of an entity with a particular forum can be attributed to another person or entity if the entity having the forum contacts is the mere alter ego of such other person or entity."[21]

---

[18]  *See Mktg. Prods. Mgmt., LLC v. HealthandBeautyDirect.com, Inc.*, 2004 WL 249581, at *3 (Del. Super. Ct. Jan. 28, 2004) ("The alter ego theory of jurisdiction is based on the premise that the contacts of a Delaware entity may be attributed to another person or entity if the Delaware entity is the mere alter ego of such other person or entity."); *Cuppels v. Mountaire Corp.*, 2020 WL 3414848, at *6 (Del. Super. Ct. June 18, 2020) ("To succeed under the agency theory, Plaintiffs must show that 'the parent corporation dominates the activities of the subsidiary. . . . [T]he control must be actual, participatory, and total.'") (quoting *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831, 841 (D. Del. 1978)).

[19]  *EBG Holdings*, 2008 WL 4057745, at *13 ("Although I have found that VG 109 was an agent of NIBC for purposes of NIBC's 12(b)(2) motion to dismiss, the issue remains whether VG 109 committed any acts in relation to the formation of EBG that could be imputed to NIBC and support the exercise of personal jurisdiction over NIBC in Delaware under § 3104."); *HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 308 (Del. Ch. 1999) (requiring "the existence of acts in Delaware which can be fairly imputed to the out-of-state defendant and which satisfy the long-arm statute and/or federal due process requirements") (citations omitted).

[20]  *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) (citation omitted).

[21]  *Maloney–Refaie v. Bridge at Sch., Inc.*, 2008 WL 2679792, at *6 (Del. Ch. July 9, 2008) (quoting Donald J. Wolfe & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery*, § 3–5(c)(1) (1998)).

(15)   TFI Tutti pleads both in the alternative.  TFI Tutti claims that Sono America either acted as an agent of Sono International[22] or that Sono America is an alter ego of Sono International.[23]

(16)   Based on the allegations pled, the Court finds that there could be a reasonably conceivable claim that there was an alter ego or agency relationship between Sono International and Sono America.[24]

(17)   TFI Tutti, in its second amended complaint, highlights the fact that "Sono [America] was completely dominated and controlled by Sono International."[25]  It specifically mentions that Sono International jointly funded the venture,[26] Sono America observed no corporate formalities separate from Sono International,[27] Sono International monitored and controlled Sono America,[28] Sono

---

[22]   Pl.'s Answering Br. at 34-36.

[23]   *Id.* at 26-28.

[24]   *See EBG Holdings*, 2008 WL 4057745, at *11 ("Under the agency theory of personal jurisdiction, only acts of the agent that are directed by the principal may serve as a basis to assert jurisdiction over the principal."); *see also HMG/Courtland Props.*, 729 A.2d at 308 ("the out-of-state defendant over whom jurisdiction is sought has no real separate identity from a defendant over whom jurisdiction is clear based on actual domicile or satisfaction of Delaware's long-arm statute; and . . . .") (citations omitted).

Note the undersigned has been designated as a Vice Chancellor in this matter to adjudicate the equitable claims. D.I. 41.

[25]   2nd Am. Compl. ¶ 79 (fixing typo).

[26]   *Id.* ¶¶ 28, 56, 58.

[27]   *Id.* ¶ 64.

[28]   *Id.* ¶ 65.

International provided funds to Sono America when requested,[29] and "Sono America had no independent business or financial basis, and its three employees had no independent decision-making authority."[30]

(18)   But that alone isn't sufficient; the actions at issue must also be acts *in Delaware* that satisfy the long-arm statute.  "[TFI Tutti] has not alleged sufficient facts to support a reasonable inference that [Sono International] caused [Sono America] to be formed in Delaware or otherwise engaged in purposeful activity in Delaware which was an integral component of a transaction to which [TFI Tutti]'s cause of action relates."[31]

(19)   TFI Tutti hasn't alleged that the joint venture conducted any business in Delaware.  The only fact pled is that Sono International allegedly caused Sono America to not pay its obligations under the JVA—which occurred about four years after the creation of the joint venture—the only act to ever have occurred in Delaware.  That's not enough.[32]

_____

[29]   *Id.* ¶ 66.

[30]   *Id.* ¶ 68.

[31]   *See EBG Holdings*, 2008 WL 4057745, at *8.

[32]   *See id.* at *7 ("the alleged failure of a [international] entity—through its [international] subsidiary—to reimburse . . . [plaintiff] on an alleged obligation that arose more than two years after the signing of the Original LLC Agreement does not even approach effecting a direct and fundamental change to a Delaware entity."); *see also Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 975 (Del. Ch. 2000) ("The purely commercial reasons for which JLT Beverages may have entered into an agreement contingent upon a Delaware merger coming to fruition are entirely driven by acts outside of Delaware, do not qualify as contacts even under the most metaphysical of analyses and are not what our courts mean by a purposeful involvement with a

(20) While it is true that "a single transaction is sufficient to confer jurisdiction where the claim is based on *that* transaction,"[33] TFI Tutti's claim isn't based on *the* Delaware transaction—forming the joint venture itself. It's based on out-of-state actions taken years later. Put more plainly, the breaches alleged here are related exclusively to the actions of the joint venture like the signing of leases and incurring other expenses outside of Delaware and years after the only transaction with any Delaware tie.[34] There just is not enough alleged contact with Delaware for the Court to find that it has personal jurisdiction over the parent of the contracting entity that ultimately formed a joint venture under Delaware law.[35]

(21) Sono International's Motion to Dismiss is **GRANTED** for lack of personal jurisdiction.

---

Delaware forum sufficient to create a nexus between the commercial reasons for the agreement and forum related conduct.").

[33] *Kahn v. Lynch Commc'n Sys., Inc.*, 1989 WL 99800, at *4 (Del. Ch. Aug. 24, 1989) (emphasis added) (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del. 1986)).

[34] 2nd Am. Compl. ¶¶ 23, 94, 96.

[35] *See EBG Holdings*, 2008 WL 4057745, at *7; *cf. Connecticut Gen. Life Ins. Co. v. Pinkas*, 2011 WL 5222796, at *2 (Del. Ch. Oct. 28, 2011) ("But merely participating in the formation of a Delaware entity, without more, does not create a basis for jurisdiction in Delaware. Instead, the formation must be 'an integral component of the total transaction to which plaintiffs cause of action relates.'") (quoting *Shamrock Holdings of Cal., Inc. v. Arenson*, 421 F.Supp.2d 800, 804 (D. Del. 2006)). *But cf. Hamilton Partners, L.P. v. England*, 11 A.3d 1180, 1199 (Del. Ch. 2010) ("Not only did Grossman know that the creation of Transaction LLC would take place in the forum state, he affirmatively contracted for that event to occur by entering into the Second Settlement. By negotiating, structuring, and agreeing to a transaction in which a critical step was the formation of Transaction LLC, Grossman purposely availed himself of the benefits of Delaware law and subjected himself to suit in Delaware for purposes of a challenge to the Second Settlement.").

**SO ORDERED this 5th day of August, 2025**.

/s/ *Paul R. Wallace*

_____

Paul R. Wallace, Judge

Original to Prothonotary

cc: All parties and Counsel of Record